FILED

January 19, 2021

At:

William T. Walsh

Clerk

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA

v.

COMPREHENSIVE LANGUAGE CENTER,
INC.,

       Defendant.

Criminal No. 21-50(FLW)

Filed: January 19, 2021

Violation: 18 U.S.C. § 371

**DEFERRED PROSECUTION AGREEMENT**

The United States Department of Justice, Antitrust Division ("United States");

Comprehensive Language Center, Inc. ("CLCI"), a corporation organized and existing under the

laws of Virginia, by and through its undersigned representative, pursuant to authority granted by

its board of directors; and TATC Consulting Corporation ("TATC"), a corporation organized and

existing under the laws of Washington, D.C., by and through its undersigned representative,

pursuant to authority granted by its board of directors, enter into this Deferred Prosecution

Agreement ("Agreement"), the terms and conditions of which are as follows:

**Criminal Information and Acceptance of Responsibility**

1.  CLCI and TATC acknowledge and agree that the United States will file a one-

count Information in the United States District Court for the District of New Jersey. The

Information will charge CLCI with a single count of knowingly and willfully combining,

conspiring, confederating, and agreeing, with other persons and Berlitz Languages, Inc., another

entity engaged in the provision of foreign-language training services, to defraud the United

States by impeding, impairing, obstructing, and defeating by dishonest means the lawful

government functions of the National Security Agency (NSA), an agency of the United States,

namely, the competitive bidding for and operation of certain contracts and delivery orders issued

thereunder, from at least as early as March 2017 until at least December 2017, in violation of 18 U.S.C. § 371. In so doing, CLCI: (a) knowingly and voluntarily waives its right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution; Title 18, U.S.C., Section 3161; and Federal Rule of Criminal Procedure 48(b); and (b) knowingly and voluntarily waives for the purposes of this Agreement and for the purposes of any charges by the United States arising out of the conduct described in the Statement of Facts (attached as Attachment A and incorporated by reference into this Agreement) any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of New Jersey. The United States agrees to defer prosecution of CLCI pursuant to the terms and conditions described below.

2.       CLCI admits, accepts, and acknowledges that, under U.S. federal law, it is responsible for the acts of its officers, directors, employees, and agents that give rise to the charges in the Information. CLCI admits, accepts, and acknowledges that the facts set forth in the Statement of Facts are true and accurate. Should the United States pursue the prosecution that is deferred by this Agreement, CLCI agrees that it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing or other hearing. In addition, CLCI and TATC agree not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule that the Statement of

Facts should be suppressed or is otherwise inadmissible as evidence in any form. Neither this Agreement nor the Information is a final adjudication of the matters addressed in those documents.

### Parties to and Scope of the Agreement

3.      CLCI is organized under the laws of Virginia with its principal place of business in McLean, Virginia. It is a wholly-owned subsidiary of TATC. This agreement binds CLCI; TATC; and the United States Department of Justice, Antitrust Division. This Agreement does not create any contingent rights for any current or former officers, directors, employees, or agents of CLCI or TATC.

### Length of the Agreement

4.      This Agreement is effective for a period beginning on the date on which the Information is filed (the "Effective Date") and ending three (3) years from that date (the "Term"), except for the Cooperation Obligations set forth in Paragraph 6 below. CLCI and TATC agree that in the event that the United States determines, in its sole discretion, that CLCI or TATC has violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the United States, in its sole discretion, for up to a total additional time period of one year, without prejudice to the United States' right to proceed as provided in Paragraphs 17-20 below. Any extension of the Agreement extends all terms of this Agreement, including attachments, for an equivalent period, but does not extend the due date for payments provided in Paragraphs 8 and 10 below.

### Relevant Considerations

5.      The United States enters into this Agreement based on the individual facts and circumstances of this case. Among the facts considered were the following:

(a)     the nature and seriousness of the illegal conduct, which involved submitting a false and fraudulent bid to the National Security Agency for the provision of foreign language training services, which impeded the ability of the agency to conduct a competitive bidding process;

(b)     CLCI and TATC have ceased doing business and intend to dissolve;

(c)     if, at any time during the Term, CLCI or TATC resumes the conduct of commercial business of any kind, including through a successor company: (i) CLCI or TATC, whichever has resumed the conduct of commercial business, or both (hereinafter the "Resumed Company") will immediately notify the United States using the same contact information as set forth in Paragraph 27 below; and (ii) within 60 days of the resumption of business, the Resumed Company will implement an effective compliance program and internal controls with at least the minimum elements set forth in Attachment C to this Agreement; and,

(d)     this Agreement can ensure that integrity has been restored to CLCI's operations, should they continue, while preserving the United States' ability to prosecute it should a material breach occur.

The parties further agree that whether CLCI or TATC has resumed commercial business of any kind, including through a successor company, is a judgment reserved for the sole discretion of the United States, based on any and all available facts.

### Cooperation and Disclosure Obligations

6.     CLCI and TATC shall cooperate fully and truthfully with the United States in any and all matters relating to the current federal criminal investigation into violations of federal antitrust, fraud, and related criminal laws involving foreign language training services, including the conduct described in this Agreement and the attached Statement of Facts, and other conduct under investigation by the United States at any time during the Term, until the later of the date

upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the term specified in Paragraph 4 (collectively "Federal Proceeding"). Federal Proceeding also includes, but is not limited to, any investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in any Federal Proceeding. CLCI and TATC agree that their full, truthful, and continuing cooperation pursuant to this Paragraph will include, but not be limited to, the following:

(a)      producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of CLCI or TATC, that are requested by the United States in its sole discretion in connection with any Federal Proceeding, as well as providing to the United States a log of any responsive documents, information, and other materials that were not provided, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such an assertion;

(b)      using their best efforts to secure the full, truthful, and continuing cooperation of their current and former directors, officers, employees, and agents as may be requested by the United States in its sole discretion. Such efforts will include, but not be limited to, making their current directors, officers, employees, and agents available in the United States and at other mutually agreed-upon locations at CLCI's or TATC's expense for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with the Federal Proceeding; and

(c)     with respect to any information, testimony, documents, records or other tangible evidence provided to the United States pursuant to this Agreement, CLCI and TATC consent to any and all disclosures to other governmental authorities, including federal, state, and local authorities of such materials as the United States in its sole discretion shall deem appropriate.

7.     In addition to the Cooperation Obligations described above, during the Term of the Agreement, should CLCI or TATC learn of or possess any evidence or allegations of criminal violations of United States law by CLCI, TATC, or by any of their present or former officers, directors, employees, or agents during their employment at either company, CLCI and TATC shall promptly report such evidence or allegations to the United States. Any information that CLCI or TATC thus discloses to the United States will likely include proprietary, financial, confidential, and competitive business information. Public disclosure of the information and reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the United States' objectives in obtaining such reports. For these reasons, among others, the information and reports and the contents thereof are intended to remain and shall remain nonpublic, except as otherwise agreed to by the parties in writing, or except to the extent that the United States determines in its sole discretion that disclosure would be in furtherance of its discharge of its duties and responsibilities or is otherwise required by law.

**Penalty and Victim Compensation**

8.     The parties agree that CLCI owes a monetary penalty in the amount of **$140,000.00 (One Hundred and Forty Thousand Dollars and no Cents)** to the U.S. Treasury, with CLCI and TATC being jointly and severally liable for such payment. The parties agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 5. The parties also agree, however, that payment of this

penalty will be deferred until such time as CLCI or TATC resumes a commercial business of any kind, in which case the full amount of the penalty must be paid to the U.S. Treasury: (i) according to a payment schedule agreed to by the United States and the Resumed Company (defined as set forth in Paragraph 5(c)) after the Resumed Company notifies the United States of its resumption of business, as required by Paragraph 5(c)(i), or (ii) six months after the resumption of business, if there is no such agreement. The parties agree that the provisions of this Paragraph survive the Term, and the obligation of CLCI and TATC to pay the monetary penalty is a continuing obligation that does not expire until the full amount is paid as required. The parties further agree that application of the Sentencing Guidelines to determine the applicable fine range yields the following analysis:

a.     The November 1, 2018 version of the U.S.S.G. is applicable to this matter.

b.     <u>Offense Level.</u> Based upon U.S.S.G. § 2C1.1, the total offense level is 12. The base offense level under § 2C1.1(a)(2) is 12, and no Specific Offense Characteristics under (b) or Cross References under (c) apply.

c.     <u>Base Fine</u>. Based upon U.S.S.G. § 8C2.4(a)(1), the base fine is $70,000.

d.     <u>Culpability Score</u>. Based upon U.S.S.G. § 8C2.5, the culpability score is 5, calculated as follows:

| | |
|---|---|
| (a) Base Culpability Score | 5 |
| (b)(5) The organization had 10 or more employees and an individual within substantial authority personnel participated in, condoned, or was willfully ignorant of the offense | +1 |
| (g)(3) The organization clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -1 |
| **TOTAL** | 5 |

<u>Calculation of Fine Range:</u>

Base Fine:                               $70,000

| | |
|---|---|
| Multipliers: | 1.0(min)/2.0(max) |
| Fine Range: | $70,000/$140,000 |

9.      The penalty set forth in Paragraph 8 is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the United States that such penalty is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the United States is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the United States agrees that under those circumstances, it will recommend to the Court that any amount of the penalty paid under this Agreement should be offset against any criminal fine the Court imposes as part of a future judgment. CLCI and TATC acknowledge that no tax deduction may be sought, and agree that no tax deduction will be sought, in the United States in connection with the payment of any part of this penalty.

10.      The parties agree that CLCI, along with its co-conspirators, and TATC on behalf of CLCI, are jointly and severally liable for **$56,984.00 (Fifty-Six Thousand Nine Hundred and Eighty-Four Dollars and no Cents)** in victim compensation to be paid to the National Security Agency. The parties further agree that this victim compensation amount is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 5. The parties also agree, however, that payment of this victim compensation will be deferred until such time as CLCI or TATC resumes the conduct of commercial business of any kind, in which case the Resumed Company (defined as set forth in Paragraph 5(c)) must pay any outstanding amount of victim compensation to the National Security Agency according to that agency's payment instructions: (i) on a date, or according to a payment schedule, agreed to by the United States and the Resumed Company after the Resumed Company notifies the United

States of its resumption of business, as required by Paragraph 5(b)(i), or (ii) six months after the resumption of business, if there is no such agreement. The parties agree that the provisions of this Paragraph survive the Term, and the obligation of CLCI and TATC to pay victim compensation is a continuing obligation that does not expire until the full amount has been paid as required.

**Conditional Release from Liability**

11.     In return for the full and truthful cooperation of CLCI and TATC as described in Paragraph 6, and compliance with the other terms and conditions of this Agreement:

(a)     The United States agrees that, except as provided by this Agreement, it will not bring criminal charges against CLCI for any act or offense committed before the Effective Date in furtherance of an antitrust conspiracy or conspiracy to defraud involving the provision of foreign language training services in the United States, as described in the Statement of Facts;

(b)     Failure by CLCI or TATC to comply fully with the Cooperation Obligations under Paragraph 6 will void the United States' agreement in Paragraph 11(a), and CLCI may be prosecuted criminally for any federal crime of which the United States has knowledge; and

(c)     The United States' agreement in Paragraph 11(a) does not apply to subornation of perjury (18 U.S.C. § 1622), false statements (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–402), or conspiracy to commit such offenses. Its agreement in Paragraph 11(a) also does not apply to civil matters of any kind, any civil or criminal violation of the federal tax or securities laws or conspiracy to commit such offenses, or any crimes of violence.

**Related Administrative Proceedings**

12.      CLCI and TATC understand that they may be subject to exclusion, suspension, or debarment action by state or federal agencies, and that this Agreement in no way controls what action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of any cooperation and remediation of CLCI or TATC as a matter for that agency to consider before determining what action, if any, to take. By agreeing to provide this information to such agencies, the United States is not agreeing to advocate on behalf of CLCI or TATC, or to confirm that either company has provided any cooperation or remediation in this matter, but rather is agreeing to provide facts to be evaluated independently by such agencies.

**Corporate Compliance Program**

13.      As provided in Paragraph 5(c)(ii), if, at any time during the Term, CLCI or TATC resumes the conduct of commercial business of any kind, including through a successor company, CLCI and TATC agree that the Resumed Company (as defined in Paragraph 5(c)) will implement an effective compliance program and internal controls with at least the minimum elements set forth in Attachment C to this Agreement, designed to prevent and detect criminal antitrust and fraud violations throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors.

14.      CLCI and TATC further represent that, in the event of a resumption of commercial business as described above, the Resumed Company will continue to periodically review its compliance program and make any necessary adjustments and updates based on changes in the Resumed Company's operations, circumstances, legal developments, and industry practices.

10

**Deferred Prosecution**

15.      In consideration of the undertakings agreed to herein by CLCI and TATC, the United States agrees that any prosecution of CLCI for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term. To the extent there is conduct disclosed by CLCI that is not set forth in the Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

16.      The United States further agrees that if CLCI and TATC fully comply with all obligations under this Agreement, the United States will not continue the criminal prosecution of the offense described in Paragraph 1 of the Agreement and, at the conclusion of the Term, this Agreement shall expire, except for the Cooperation Obligations set forth in Paragraph 6, and the payment obligations set forth in Paragraphs 8 and 10. Within thirty (30) days of the Agreement's expiration, the United States shall seek dismissal with prejudice of the Information described in Paragraph 1 of the Agreement.

**Breach of Agreement**

17.      If, during the Term of this Agreement, CLCI or TATC (a) commits any felony offense under U.S. federal law; (b) provides to the United States deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to satisfy any Cooperation Obligations as set forth in Paragraph 6 of this Agreement; (d) fails to satisfy the requirements set forth in Attachment C; or (e) otherwise fails to completely perform or fulfill any of its obligations under this Agreement, regardless of whether the United States becomes aware of such a breach after the Term is complete, CLCI shall thereafter be subject to prosecution for any federal criminal violation of which the United States has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the United States in the United States District Court for

11

the District of New Jersey or any other appropriate venue.  Determination of whether CLCI or

TATC has breached this Agreement and whether to pursue prosecution of CLCI shall be in the

United States' sole discretion. Any such prosecution may be premised on information provided

by any source, including but not limited to CLCI and TATC. Any such prosecution relating to

the conduct described in the Statement of Facts or relating to conduct known to the United States

prior to the date of the signing of this Agreement that is not time-barred by the applicable statute

of limitations on the Effective Date of this Agreement may be commenced against CLCI,

notwithstanding the expiration of the statute of limitations between the Effective Date and the

expiration of the Term plus one year. Thus, by signing this Agreement, CLCI agrees that the

statute of limitations with respect to any such prosecution that is not time-barred on the Effective

Date of this Agreement shall be tolled for the duration of the Term plus one year. In addition,

CLCI agrees that the statute of limitations as to any felony offense under U.S. federal law that

occurs during the Term will be tolled from the date upon which the offense occurs until the

earlier of: (a) the date upon which the United States is made aware of the offense, or (b) the

duration of the Term plus five years, and that this period shall be excluded from any calculation

of time for purposes of the application of the statute of limitations.

18.     In the event that the United States determines that CLCI or TATC has breached

this Agreement, the United States agrees to provide the companies with written notice of such

breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of

receipt of such notice, CLCI and TATC shall have the opportunity to respond to the United

States in writing to explain the nature and circumstances of such breach, as well as the actions

they have taken to address and remediate the situation, which the United States shall consider in

determining whether to pursue prosecution of CLCI.

19.     In the event that the United States determines that CLCI or TATC have breached this Agreement: (a) all statements made by or on behalf of CLCI or TATC to the United States or to the Court, including the Statement of Facts, and any testimony given by any individual before a grand jury, court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against CLCI; and (b) neither CLCI nor TATC shall assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal law or rule that testimony or statements made by or on behalf of CLCI or TATC prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether any conduct or statement of any current or former director, officer, or employee, or any person acting on behalf of, or at the direction of, CLCI or TATC will be imputed to one or both companies for the purpose of determining whether CLCI or TATC has violated any provision of this Agreement shall be in the sole discretion of the United States.

20.     CLCI and TATC acknowledge that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court against CLCI if CLCI or TATC breaches this Agreement and this matter proceeds to judgment. CLCI and TATC further acknowledge that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

21.     On the date that the period of deferred prosecution specified in this Agreement expires or upon the date of either the final dissolution of CLCI or TATC or the resignation or termination of all employees, officers, and directors of the company(ies), whichever is sooner, as

set forth in Attachment D, CLCI and TATC, by the respective Presidents or CEOs of the

Companies and their General Counsel or outside legal counsel, will certify to the United States

that CLCI and TATC have met their disclosure obligations set forth in Paragraph 7 of this

Agreement. Each certification will be deemed a material statement and representation by CLCI

and TATC to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and

1519, and it will be deemed to have been made in the judicial district in which this Agreement is

filed.

### Sale, Merger, or Other Change in Corporate Form

22.     CLCI and TATC agree that, during the Term, if either company undertakes any

change in corporate form, including if it sells, merges, or transfers business operations that are

material to its consolidated operations, as they exist as of the date of this Agreement, whether

such sale is structured as a sale, asset sale, merger, or transfer, it shall provide notice to the

United States at least thirty (30) business days prior to undertaking any such sale, merger,

transfer, or other change in corporate form. Unless, after receiving the required notice from

CLCI or TATC of the transaction, the United States consents in its sole discretion that a specific

transaction will not be subject to this provision, CLCI and TATC shall include in any contract

for sale, merger, or transfer a provision binding the purchaser, or any successor in interest

thereto, to the obligations described in this Agreement. Unless the United States consents as

described above, the purchaser or successor in interest must also agree in writing that the United

States' ability to enforce all provisions of this Agreement, including to determine that it has been

breached, is applicable in full force to that entity. CLCI and TATC agree that, unless the United

States consents as described above, the failure to include these provisions in the transaction will

make any such transaction null and void.  The United States shall inform CLCI and TATC

within fifteen (15) business days of receiving CLCI's or TATC's notification if it consents that

the transaction(s) will not be subject to this provision, or if it determines that the transaction(s) will have the effect of circumventing or frustrating the purposes of this Agreement. If the United States does not respond to CLCI's or TATC's notification within fifteen (15) business days, the transaction(s) at issue shall be deemed not to be subject to this provision and not to have the effect of circumventing or frustrating the purposes of this Agreement. If, at any time during the Term, CLCI or TATC engages in a transaction(s) that has the effect of circumventing or frustrating the purposes of this Agreement, the United States may deem it a breach pursuant to Paragraphs 17-20 of this Agreement. Nothing herein shall restrict CLCI or TATC from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction(s), so long as such indemnification does not have the effect of circumventing or frustrating the purposes of this Agreement, as determined by the United States in its sole discretion.

## Public Statements by the Company

23.     CLCI and TATC expressly agree that they shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for CLCI or TATC, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by CLCI set forth above or as described in the Statement of Facts. Any such contradictory statement shall, subject to cure rights of CLCI and TATC described below, constitute a breach of this Agreement, and CLCI thereafter shall be subject to prosecution as set forth in Paragraphs 17-20 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to CLCI for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the United States. If the United States determines that a public statement by any

15

such person contradicts in whole or in part a statement contained in the Statement of Facts, the

United States shall so notify CLCI and TATC, which may avoid a breach of this Agreement by

publicly repudiating such statement(s) within five (5) business days after notification. CLCI shall

be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the

matters set forth in the Statement of Facts provided that such defenses and claims do not

contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph

does not apply to any statement made by any present or former officer, director, employee, or

agent of CLCI or TATC in the course of any criminal, regulatory, or civil case initiated against

such individual, unless such individual is speaking on behalf of CLCI or TATC.

24.     CLCI and TATC agree that if either company, or any of its direct or indirect

subsidiaries or affiliates, issues a press release or holds any press conference in connection with

this Agreement, CLCI and TATC shall first consult the United States to determine: (a) whether

the text of the release or proposed statements at the press conference are true and accurate with

respect to matters between the United States, CLCI, and TATC; and (b) whether the United

States has any objection to the release or proposed statements.

**Limitation on Binding Effect of Agreement**

25.     This Agreement is binding on CLCI, TATC, and the United States Department of

Justice, Antitrust Division, but specifically does not bind any other component of the Department

of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory

agencies, or any other authorities.

26.     If the court refuses to grant exclusion of time under the Speedy Trial Act, 18

U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the

Term shall be deemed not to have begun, except that the statute of limitations for any

prosecution relating to the conduct described in the Statement of Facts shall be tolled from the

date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 2 of this Agreement.

### Notice

27.     Any notice to the United States under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Joseph Muoio, Chief of the New York Office, Department of Justice-Antitrust Division, 26 Federal Plaza, Room 3630, New York, NY 10278. Any notice to CLCI or TATC under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to: Charles B. Thomas, Bean Kinney & Korman, 2311 Wilson Boulevard, Suite 500, Arlington, VA 22201. Notice shall be effective upon actual receipt by the United States, CLCI, or TATC.

[Intentionally left blank]

**Entirety of Agreement**

28.     This Agreement, including its Attachments A-D, sets forth all the terms of the Agreement between CLCI, TATC, and the United States. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the United States, the attorneys for CLCI and TATC, and a duly authorized representative of CLCI and TATC.

Dated: January 15, 2021

Respectfully submitted,

By: _____

Maria Luisa T. Acosta
Director

Comprehensive Language Center, Inc.
TATC Consulting Corporation

By: _____

Carrie A. Syme, Assistant Chief
Kathryn Kushner, Trial Attorney

U.S. Department of Justice
Antitrust Division, New York Office
26 Federal Plaza, Room 3630
New York, NY 10278
(646) 714-1906

By: _____

Daniel Zelenko
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY  10022-2544

Counsel for CLCI and TATC

## COMPANY OFFICER'S CERTIFICATE

I have read the Deferred Prosecution Agreement ("Agreement") and carefully reviewed every part of it with outside counsel for Comprehensive Language Center, Inc. and TATC Consulting Corporation (the "Companies"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Companies, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Companies. Counsel fully advised me of the rights of the Companies, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Companies. I have advised and caused outside counsel for the Companies to advise the Board of Directors fully of the rights of the Companies, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. No one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Companies, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am a Director of Comprehensive Language Center, Inc. and a Director of TATC Consulting Corporation, and that I have been duly authorized by the Companies to execute this Agreement on behalf of the Companies.

Date: January 15, 2021

Comprehensive Language Center, Inc.
TATC Consulting Corporation

By: _Maria Luisa T. Acosta_____
DocuSigned by:
766C4FBD883A43C...

Maria Luisa T. Acosta
Director

19

## CERTIFICATE OF COUNSEL

I am counsel for Comprehensive Language Center, Inc. and TATC Consulting Corporation (the "Companies") in the matter covered by the Deferred Prosecution Agreement ("Agreement"). In connection with such representation, I have examined relevant documents of the Companies and discussed the terms of this Agreement with the Board of Directors of the Companies. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Companies has been duly authorized to enter into this Agreement on behalf of the Companies and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Companies and is a valid and binding obligation of the Companies. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and Maria Luisa T. Acosta, a Director of the Companies. I have fully advised them of the rights of the Companies, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into this Agreement. To my knowledge, the decision of the Companies to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: January 15, 2021

By: _____
  DocuSigned by:
  Daniel L. Zelenko
  90DAE54736F64EA...

  Daniel L. Zelenko
  Crowell & Moring LLP
  Counsel for Comprehensive Language Center, Inc., and
  TATC Consulting Corporation

**Attachment A**

**Statement of Facts**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement ("Agreement") between the United States Department of Justice, Antitrust Division ("United States") and Comprehensive Language Center, Inc. ("CLCI" or "the Company"). The Company hereby agrees and stipulates that the following information is true and accurate. The Company admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees, and agents as set forth below. Should the United States pursue the prosecution that is deferred by the Agreement, the Company agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any criminal proceeding. The following facts establish beyond a reasonable doubt the charges set forth in the Information.

1.      From at least as early as March 2017 until at least December 2017 (the "Relevant Period"), CLCI, a corporation organized and existing under the laws of Virginia with its principal place of business in McLean, Virginia, was, among other things, a provider of foreign-language training services in the United States. CLCI employed approximately 17 individuals.

2.      Whenever in this Statement of Facts reference is made to any act, deed, or transaction of CLCI, the statement means that CLCI engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

3.      Many individuals and employees of companies and government agencies need to be trained in speaking, reading, and understanding languages other than English to perform their job duties. Private companies often are hired to perform foreign-language training services, including by providing a language instructor, designing the course of training,

creating training materials, and providing appropriate facilities in which the training takes place. In some cases, foreign-language training companies must compete to win contracts that will allow them to provide training services for a particular customer for a fee.

4.    Certain offices and agencies of the United States government, including the National Security Agency ("NSA"), have regular needs to train their employees and contractors in foreign languages. For many military personnel and civilian workers in the area of cryptology, this is mission-critical work that supports the mission of the NSA to protect the nation from threats and gain an advantage for the United States and its allies in matters of intelligence and security.

5.    During the Relevant Period, CLCI and Berlitz Languages, Inc. ("Berlitz") competed against each other and other entities to win contracts to provide foreign-language training services to the NSA.

6.    In early 2017, the NSA announced a competitive bidding process by which it would award up to three prime contracts to companies to provide training services in specified foreign languages at each of six different geographic locations around the United States, including an area that encompasses the city of Odenton, Maryland. These contracts were collectively known as External Language Training III contracts, hereinafter "ELT-III Contracts." The term of each ELT-III Contract, including extensions, ran from 2017-2022 and, together, authorized up to $3.75 million in funds to be paid to the successful bidders. The NSA stated that the ELT-III Contracts would be awarded to up to three companies whose bids were deemed Technically Acceptable, including by being able to provide training in appropriate facilities at all six specified geographic locations, and by bidding the lowest prices. On

approximately August 1, 2017, CLCI, Berlitz, and an unrelated third party each were awarded one of the ELT-III Contracts.

7.    Each winner of an ELT-III Contract was thereafter entitled to submit a bid for individual Delivery Orders issued under those contracts; each Delivery Order called for a particular set of training sessions in a particular foreign language at a particular location. The NSA stated that each Delivery Order would be awarded to the company whose bid for the described training was deemed Technically Acceptable and who bid the lowest price. In order to be deemed Technically Acceptable, the company was required to have a facility in the particular location in which it could conduct the training. Through December 21, 2017, the NSA bid and awarded approximately 15 Delivery Orders under the ELT-III Contracts.

8.    During the Relevant Period, in the District of New Jersey and elsewhere, CLCI and its co-conspirators did knowingly and willfully combine, conspire, confederate, and agree to defraud the United States by impeding, impairing, obstructing, and defeating by dishonest means the lawful government functions of the NSA, an agency of the United States, namely, the competitive bidding for and operation of the ELT-III Contracts and the Delivery Orders issued thereunder.

9.    The object of the conspiracy was for CLCI to fraudulently obtain an ELT-III Contract and Delivery Orders issued thereunder, by falsely representing CLCI's facilities available to perform under the Contract; to suppress competition between CLCI and Berlitz for certain Delivery Orders issued under their Contracts; and to obtain payments for certain work performed under their Contracts.

10.    For the purpose of forming and carrying out the charged combination and conspiracy, CLCI, Berlitz, and their co-conspirators did those things that they combined and conspired to do, including, among other things:

a.    discussing, agreeing to, and facilitating CLCI's submission of false and misleading bid information to the NSA in order to misrepresent its bid as Technically Acceptable, specifically by falsely and misleadingly claiming that CLCI could perform foreign-language training services at a particular facility in Odenton, Maryland ("the Odenton Facility") that in fact belonged to and was operated solely by Berlitz;

b.    discussing and agreeing that, in exchange for Berlitz's agreement to allow CLCI to misrepresent the Odenton Facility as available to CLCI for its performance of foreign-language training services, CLCI would not bid against Berlitz for Delivery Orders involving foreign-language training scheduled to take place in or near Odenton, Maryland;

c.    discussing and agreeing that CLCI and Berlitz would deceive the NSA regarding the existence and nature of their agreement;

d.    submitting invoices to the NSA for foreign-language training services provided under the ELT-III Contracts and associated Delivery Orders, which, by the means and methods described above, were based on non-competitive bids; and

e.    receiving payments for foreign-language training services provided under the ELT-III Contracts and associated Delivery Orders, which, by the means and methods described above, were based on non-competitive bids.

11.    In furtherance of the conspiracy and to effect the illegal object thereof, CLCI, together with its co-conspirators, committed the following overt acts, among others, in the District of New Jersey and elsewhere in the United States:

24

a.      On or around April 12, 2017, CLCI emailed Berlitz a draft letter memorializing their agreement, pursuant to which:

i.      CLCI, in its bid to the NSA for the ELT-III Contract, would falsely represent that it could perform foreign-language training services at the Odenton Facility;

ii.      CLCI would not disclose to the NSA that the Odenton Facility was in fact owned and operated solely by Berlitz; and

iii.      if both CLCI and Berlitz won ELT-III Contracts, CLCI would not bid against Berlitz for Delivery Orders issued under the ELT-III Contracts for work in or near Odenton, Maryland;

b.      On or around April 17, 2017, CLCI and Berlitz executed the written agreement described in subsection (a) above;

c.      On or around April 20, 2017, CLCI and Berlitz each submitted a bid to the NSA for an ELT-III Contract. The bid submitted by CLCI falsely described the Odenton Facility as "our Odenton, MD location" and included a floor plan for the Odenton Facility described as "our floor plan," without disclosing to the NSA that such facility was in fact owned and operated solely by Berlitz;

d.      In or around May 2017, after the NSA sent a request to CLCI and Berlitz for additional information on their Maryland training facilities, Berlitz emailed CLCI a revised floorplan for the Odenton Facility for CLCI to use in its response to the NSA;

e.      On or around May 17, 2017, CLCI submitted a revised floor plan for the Odenton Facility and again falsely represented it as a location at which CLCI could perform the training, without disclosing to the NSA that such facility was in fact owned and operated solely by Berlitz;

25

      f.      On or around August 1, 2017, after the NSA had selected both CLCI and Berlitz as winners of ELT-III Contracts, CLCI and Berlitz each executed a written ELT-III Contract with the NSA, entitling each to compete for Delivery Orders to be bid and awarded under those contracts;

      g.      On or around August 9, 2017, after the NSA had sent out the first ELT-III Delivery Order for bid, CLCI and Berlitz exchanged emails to maintain their conspiratorial agreement, including an email by CLCI to confirm that, in accordance with their April 17, 2017 conspiratorial agreement, CLCI would not bid on this Delivery Order because it called for foreign-language training work in Maryland;

      h.      Shortly after the email conversations referred to in subsection (g) above, consistent with those communications and the conspiratorial agreement, CLCI declined to submit a bid to the NSA for the first Delivery Order;

      i.      On or around August 17, 2017, after the NSA had sent out the second ELT-III Delivery Order for bid, CLCI and Berlitz exchanged emails to maintain their conspiratorial agreement, including an email by CLCI to confirm that it would not bid on this Delivery Order because it called for foreign-language training work in Maryland;

      j.      Shortly after the email conversations referred to in subsection (i) above, consistent with those communications and the conspiratorial agreement, CLCI declined to submit a bid to the NSA for the second Delivery Order; and

      k.      During the period from in or around August 2017 until on or around December 18, 2017, CLCI did not submit any bid to the NSA for an ELT-III Delivery Order in competition with a bid from Berlitz for foreign-language training work to be performed in Maryland.

## Attachment B: Certificate of Corporate Board Resolutions

WHEREAS, Comprehensive Language Center, Inc. ("CLCI") has been engaged in discussions with the United States Department of Justice, Antitrust Division ("United States") regarding issues arising in relation to the conduct described in Attachment A; and

WHEREAS, in order to resolve such discussions, it is proposed that CLCI enter into a Deferred Prosecution Agreement with the United States dated January 15, 2021 ("Agreement"); and

WHEREAS, TATC Consulting Corporation ("TATC") wholly owns CLCI and has the authority to enter this Agreement on behalf of CLCI and on its own behalf;

WHEREAS, TATC's Director, Maria Luisa T. Acosta, together with outside counsel for TATC and CLCI, have advised the Board of Directors of TATC and CLCI of their rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such Agreement with the United States;

Therefore, the Board of Directors has RESOLVED that:

1.     TATC and CLCI: (a) acknowledge the filing of the one-count Information charging CLCI with violation of 18 U.S.C. § 371; (b) waive indictment of CLCI on such charges and enter into the Agreement with the United States; (c) agree that CLCI owes a monetary penalty in the amount of $**140,000.00 (One Hundred and Forty Thousand Dollars and no Cents)** to the United States Treasury with respect to the conduct described in Attachment A, with CLCI and TATC being jointly and severally liable for such payment, except that such payment is deferred unless and until CLCI or TATC resumes the conduct of commercial business, as provided in the Agreement; and (d) agree that CLCI, along with its co-conspirators, and TATC on behalf of CLCI, are jointly and severally liable for victim compensation in the amount of **$56,984.00 (Fifty-Six**

**Thousand Nine Hundred and Eighty-Four Dollars and no Cents)** to the National Security Agency with respect to the conduct described in Attachment A, except that such payment is deferred unless and until CLCI or TATC resumes the conduct of commercial business, as provided in the Agreement;

2.      TATC and CLCI accept and will comply with all of the terms and conditions contained in the Agreement and its attachments;

3.      Director of TATC, Maria Luisa T. Acosta, is hereby authorized, empowered and directed, on behalf of TATC and CLCI, to execute the Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as the Director of TATC, Maria Luisa T. Acosta, may approve;

4.      Director of TATC, Maria Luisa T. Acosta, is hereby authorized, empowered and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and,

5.      All of the actions of Director of TATC, Maria Luisa T. Acosta which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of TATC and CLCI.


Date: January 15, 2021

By:  _Maria Luisa T. Acosta_
DocuSigned by:
795C4FBD883A43C...
_____
Maria Luisa T. Acosta
Director, TATC Consulting Company

**Attachment C**

**Corporate Compliance Program**

1.          As part of the Deferred Prosecution Agreement between Comprehensive
Language Center, Inc. ("CLCI"); its parent company, TATC Consulting Corporation ("TATC");
and the United States Department of Justice, Antitrust Division ("United States") dated January
15, 2021, and to address any deficiencies in CLCI's and TATC's compliance programs,
including their policies, procedures, and internal controls relating to compliance with federal
fraud and antitrust laws and regulations, CLCI and TATC agree to conduct, in a manner
consistent with all of their obligations under this Agreement, appropriate reviews of their
existing policies, procedures, and internal controls, if, at any time during the Term, CLCI or
TATC resumes the conduct of commercial business of any kind, including through a successor
company. Whether CLCI or TATC has resumed commercial business of any kind, including
through a successor company, is a judgment reserved for the sole discretion of the United States,
based on any and all available facts.

2.          If, at any time during the Term, CLCI or TATC resumes the conduct of
commercial business of any kind, including through a successor company, CLCI or TATC
(whichever company has resumed the conduct of commercial business, or both, hereinafter the
"Resumed Company") agrees to institute a compliance program, including by implementing
compliance policies and procedures designed to ensure the prevention and detection of fraud and
antitrust violations. At a minimum, this should include, but not be limited to, the following
elements:

          (a)          *Design and Comprehensiveness*. The Resumed Company has or will
develop compliance policies and procedures reasonably designed to prevent fraud and antitrust
violations. The policies and procedures should be integrated into the Resumed Company's

business practices and reinforced through appropriate internal controls specifically tailored to the Resumed Company's business. The Resumed Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company.

(b)  *Culture of Compliance.*  The Resumed Company's senior leadership as a whole, through words and actions, will work to foster a culture of compliance throughout the organization. Senior leadership across the organization are and will be held accountable for failures in the Resumed Company's fraud and antitrust compliance.

(c)  *Responsibility for the Compliance Program.*  The Resumed Company will assign responsibility to one or more senior leaders in the company or its parent company with sufficient background and competence in fraud and antitrust law for the implementation and oversight of the compliance program. Those responsible for the Resumed Company's compliance program will be provided with sufficient autonomy, authority, and seniority within the Resumed Company's governance structure to effectuate the compliance program.

(d)  *Periodic Risk-Based Reviews.*  The Resumed Company will conduct periodic fraud and antitrust risk assessments to ensure that its compliance program, including internal controls, is tailored to the Resumed Company's individual circumstances. In undertaking such risk assessments, the Resumed Company will review its policies and procedures and make any necessary adjustments and updates based on changes in the Resumed Company's operations, circumstances, legal developments, and industry practices.

(e)  *Training and Communication.*  The Resumed Company will develop a fraud and antitrust compliance training program tailored to the Resumed Company's specific fraud and antitrust risks and will periodically update the program to ensure that it reflects the

Resumed Company's current policies and reporting procedures, and legal, technical, or marketplace developments. The audience, timing, frequency, form, and content of the Resumed Company's fraud and antitrust training should be commensurate with the Resumed Company's operations and circumstances. The Resumed Company should make certain that all relevant employees (regardless of management level or location) understand the training and when and how to report a possible fraud or antitrust violation. Training may include participation and compliance certifications as appropriate. The Resumed Company will also maintain detailed records of training and compliance-related communications.

(f)     *Monitoring and Auditing.*  The Resumed Company will conduct regular monitoring and auditing of its fraud and antitrust compliance program to ensure that the program is fully implemented and followed. If the Resumed Company's monitoring and auditing functions detect potential violations, they will be reported to the Company's governing authority by the individual(s) responsible for the compliance program. The Resumed Company will also revise its policies, procedures, and internal controls as appropriate to reflect the results and findings of monitoring and audit activities.

(g)     *Reporting and Guidance.*  The Resumed Company will implement an effective and confidential system for communication that employees may use to seek guidance, raise concerns, or report potential fraud or antitrust violations anonymously and confidentially without fear of retaliation. The system will be widely disseminated to all relevant employees and will be designed to respond promptly to all communications. The Resumed Company will maintain detailed records of any communications through this system and how those communications were addressed.

(h)     *Incentives and Discipline.*  The importance of fraud and antitrust compliance will be reflected in the Resumed Company's employee evaluation, incentive, and compensation structure. The Resumed Company will discipline employees, managers, and senior executives as appropriate for fraud and antitrust compliance failures.

(i)     *Remediation.*  The Resumed Company shall have procedures in place to address failures in the Resumed Company's fraud and antitrust compliance program and to communicate changes in its policies to employees.

# ATTACHMENT D

## Certification

To:     United States Department of Justice
           Antitrust Division
           Attention: Joseph Muoio, Chief, New York Office

Re:     Deferred Prosecution Agreement Disclosure Certification

The undersigned certify, pursuant to Paragraph 21 of the Deferred Prosecution Agreement filed on January 19, 2021  in the U.S. District Court for the District of New Jersey ("Agreement"), by and between the United States Department of Justice, Antitrust Division; Comprehensive Language Center, Inc., ("CLCI"); and its parent company TATC Consulting  Corporation ("TATC," together, "the Companies") that the undersigned are aware of the Companies' disclosure obligations under Paragraph 7 of the Agreement and that the Companies have disclosed to the Antitrust Division any and all evidence or allegations of conduct required pursuant to Paragraph 7 of the Agreement, which includes evidence or allegations that may constitute a violation of federal antitrust, fraud, and related criminal laws ("Disclosable Information"). This obligation to disclose information extends to any and all Disclosable Information that has been identified through the Companies' compliance programs, whistleblower channels, internal audit reports, due diligence procedures, investigation processes, or other of the Companies' sources and processes. The undersigned further acknowledge and agree that the reporting requirement contained in Paragraph 7 and the representations contained in this certification constitute a significant and important component of the Agreement and the Antitrust Division's determination whether the Companies have satisfied their obligations under the Agreement.

The undersigned hereby certify respectively that [he/she] is the [President/Chief Executive Officer] of [CLCI/TATC] and that [he/she] is the [General Counsel of/outside legal counsel for]

[CLCI/TATC], and that each has been duly authorized by the Companies to sign this Certification on behalf of the Companies.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Companies to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the District of New Jersey. This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the District of New Jersey.


By: _____          Dated: _____
        [NAME]
        [President/Chief Executive Officer]
        CLCI/TATC


By: _____          Dated: _____
        [NAME]
        [TITLE]
        [COMPANY/FIRM]


34